*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALASKA CONSERVATION FOUNDATION, )<br><br>Petitioner, )<br><br>v. )<br><br>PEBBLE LIMITED PARTNERSHIP, )<br><br>Respondent. ) | Supreme Court Nos. S-15059/15060/ 15089 (Consolidated)<br><br>Superior Court No. 3AN-09-09173 CI<br><br>O P I N I O N<br><br>No. 7012 – May 29, 2015 |

ALASKA CONSERVATION
FOUNDATION,                            )
                                       )
                    Petitioner,        )
                                       )
         v.                            )
                                       )
PEBBLE LIMITED PARTNERSHIP,            )
                                       )
                    Respondent.        )
_____       )
NUNAMTA AULUKESTAI, RICKY              )
DELKITTIE, SR., VIOLET WILLSON,        )
BELLA HAMMOND, and VICTOR              )
FISCHER,                               )
                                       )
                    Petitioners,       )
                                       )
         v.                            )
                                       )
STATE OF ALASKA, DEPARTMENT            )
OF NATURAL RESOURCES, and              )
PEBBLE LIMITED PARTNERSHIP,            )
                                       )
                    Respondents.       )
_____       )
TRUSTEES FOR ALASKA,                   )
                                       )
                    Petitioner,        )
                                       )
         v.                            )
                                       )
PEBBLE LIMITED PARTNERSHIP,            )
                                       )
                    Respondent.        )
_____       )

Supreme Court Nos. S-15059/15060/
15089 (Consolidated)

Superior Court No. 3AN-09-09173 CI

O P I N I O N

No. 7012 – May 29, 2015

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Susan Orlansky and William J. Wailand, Feldman Orlansky & Sanders, Anchorage, for Petitioner Alaska Conservation Foundation. Nancy S. Wainwright, Victoria Clark, and Stephen E. Cotton, Trustees for Alaska, Anchorage, for Petitioners Nunamta Aulukestai, et al. William S. Cummings, Friedman Rubin, Bremerton, Washington, for Petitioner Trustees for Alaska. Matthew Singer, Howard S. Trickey, and Robert J. Misulich, Jermain Dunnagan & Owens, P.C., Anchorage, for Respondent Pebble Limited Partnership. John A. Treptow, Senior Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Respondent State of Alaska. Brettny Hardy, Thomas S. Waldo, and Shawn Eisele, Earthjustice, Juneau, for Amici Curiae Council on Foundations, Sierra Club, Northern Alaska Environmental Center, and Alaska Community Action on Toxics. Joshua A. Decker and David C. Embree, American Civil Liberties Union of Alaska Foundation, Anchorage, for Amici Curiae Alaska Legal Services Corporation, American Civil Liberties Union of Alaska Foundation, Native American Rights Fund, Northern Justice Project, LLC, and Planned Parenthood of the Great Northwest.

Before: Winfree, Maassen, and Bolger, Justices, and Matthews and Eastaugh, Senior Justices.[*] [Fabe, Chief Justice, and Stowers, Justice, not participating.]

WINFREE, Justice.

---

[*] Sitting by assignment made pursuant to article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

## I.    INTRODUCTION

Alaska Statute 09.60.010 was enacted to abrogate our previous common law public interest litigation attorney's fees framework and replace it with a narrower constitutional litigation framework. The statute both encourages and protects those challenging governmental action as a violation of federal or state constitutional rights. First, the statute provides that a successful claimant generally is entitled to an award of full reasonable attorney's fees and costs incurred in connection with a constitutional claim, unless the claimant had "sufficient economic incentive" to bring the claim regardless of its constitutional nature. Second, the statute protects an unsuccessful claimant from an adverse attorney's fees award if the constitutional claim was not frivolous and the claimant did not have "sufficient economic incentive" to bring the claim regardless of its constitutional nature. The primary question raised in this case by the original applications for relief and petition for review, which seek to quash an order for wide-ranging discovery about the petitioners' financial information and the third-party funding of this litigation, is what "sufficient economic incentive" means in this context.

As presented to us here, the question arose from unsuccessful constitutional claimants' invocation of the statutory protection against adverse awards of attorney's fees and the responsive assertion that they had sufficient economic incentive to bring their claim regardless of its constitutional nature. But in a related decision issued today,[1] we reversed the superior court's decision on the merits of the constitutional claim and remanded for entry of declaratory judgment in the claimants' favor. The constitutional claimants have therefore become the prevailing parties, and we assume that on remand

---

[1]    *Nunamta Aulukestai, et al. v. State, Dep't of Natural Res.*, ___ P.3d ___, Op. No. 7011, 2015 WL _____, (Alaska May 29, 2015).

they will seek an award of attorney's fees and costs under AS 09.60.010. Because such an award is conditioned on the absence of sufficient economic incentive to bring the claim regardless of its constitutional nature, we also assume that on remand the superior court would enter the same discovery orders regarding the petitioners' financial information and third-party funding of the litigation. We see no purpose in dismissing the original applications for relief and petition for review as moot in light of the change in prevailing party status, only to have them re-filed as a result of further attorney's fees proceedings in the superior court; we therefore address the meaning of "sufficient economic incentive."

We first conclude that our earlier public interest litigation case law, outlined below, provides the guiding parameters for the meaning of "sufficient economic incentive." We also conclude that in this case the claimants did not have "sufficient economic incentive" to bring the claim regardless of its constitutional nature. We therefore vacate the superior court's discovery order and remand for further proceedings consistent with today's decisions.

## II. FACTS AND PROCEEDINGS

### A. Underlying Litigation

Four individual Alaskans and Nunamta Aulukestai, a non-profit organization whose members are village corporations in the Bristol Bay region, sued the State of Alaska, Department of Natural Resources, for alleged constitutional violations related to land and water use permits issued to Pebble Limited Partnership (Pebble) for what we will refer to as the Pebble Project.[2] They sought declaratory and injunctive relief — primarily a court order requiring the State to provide public notice and make best-interest findings before authorizing land and water use permits for the Pebble

---

[2] *See generally id.* at 3-10.

Project.[3]  Pebble intervened to defend its existing permits and the State's permitting process.[4]  After a non-jury trial the superior court issued findings of fact and conclusions of law resolving the case in favor of the State and Pebble.[5]

B.      **Motions For Attorney's Fees And Related Discovery**

The State sought awards of costs and attorney's fees under Alaska Civil Rules 79 and 82, requesting about $82,000 in costs and 30% of its attorney's fees, about $484,000.  Pebble requested about $105,000 in costs and 30% of its attorney's fees, about $284,000.  Altogether the State and Pebble sought costs and attorney's fees awards in excess of $950,000 against Nunamta Aulukestai and the individuals.

Nunamta Aulukestai and the individuals responded by invoking AS 09.60.010(c)(2)'s constitutional claimant protection, which provides:

> [A court] may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant . . . did not prevail in asserting the right, the action . . . was not frivolous, and the claimant did not have sufficient economic incentive to bring the action . . . regardless of the constitutional claims involved.

Nunamta Aulukestai and the individuals argued that the court could not award attorney's fees against them because the case concerned a non-frivolous constitutional claim. Nunamta Aulukestai's executive director and the individuals disclaimed any economic interest in the litigation's outcome.[6]

---

[3]      *Id.* at 7-10.

[4]      *Id.* at 10.

[5]      *Id.* at 15-17.

[6]      Nunamta Aulukestai and the individuals also invoked AS 09.60.010(e)'s "substantial and undue hardship" protection, which provides:  "The court, in its
(continued...)

The State and Pebble disputed Nunamta Aulukestai's protected constitutional claimant status, arguing that Nunamta Aulukestai had sufficient economic incentive to bring the claim. According to Pebble, Nunamta Aulukestai made economic arguments throughout the litigation, particularly during closing statements when Nunamta Aulukestai's attorney described people who "have lost their livelihoods" because of Pebble's mineral exploration. Pebble also alleged that Nunamta Aulukestai acted as a "mere stalking horse," bringing the litigation on behalf of the commercial fishing industry and other entities with economic interests in stopping the Pebble Project. The State conceded that it did not know who funded the litigation, but echoed Pebble's accusation that third parties with economic incentives used Nunamta Aulukestai and the individuals as alter egos to bring the litigation.

The superior court issued a preliminary order regarding the requests for costs and attorney's fees. The court determined that Nunamta Aulukestai and the individuals brought a non-frivolous constitutional claim that "trigger[ed] the possible protection within AS 09.06.010(c)(2)." But the court also determined that the State and Pebble "made a prima facie showing that some plaintiffs had an economic incentive to make the claims litigated at trial." Because the court believed that "some source" had funded the litigation, it concluded that the State and Pebble were entitled to discovery and an evidentiary hearing on the economic incentive issue.

---

**6**    (...continued)
discretion, may abate, in full or in part, an award of attorney fees and costs . . . if the court finds . . . that the full imposition of the award would inflict a substantial and undue hardship upon the party . . . ." According to Nunamta Aulukestai's executive director and each of the individuals, paying attorney's fees or costs would impose an intolerable financial burden, resulting in the loss of all assets or bankruptcy. Because Nunamta Aulukestai and the individuals no longer need protection under AS 09.60.010(e), we do not consider any aspect of this issue.

The State and Pebble made discovery requests seeking an array of financial information from Nunamta Aulukestai and the individuals. The State requested that Nunamta Aulukestai disclose its members, contributors, and financial information and identify shareholders of member village corporations who were commercial fishers, sports fishing guides, tourism promoters, or otherwise worked in the fishing or tourism industries. Pebble requested that Nunamta Aulukestai provide financial information, including federal tax filings and identities of all members, and disclose its members' funding sources. Pebble also requested that the individuals disclose their property and assets, individual financial information, and details of any promises or assurances from third parties about paying litigation expenses.

Nunamta Aulukestai and the individuals objected to the discovery requests, asserting they were overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence. Nunamta Aulukestai also asserted that some requested information was protected by attorney-client privilege, work product immunity, and constitutional rights to free speech and association. The individuals disclosed some financial information, such as annual income, and declared that their attorney-client agreement made them personally responsible for any litigation fees or costs owed to an opposing party.

The State and Pebble filed motions to compel discovery of the information withheld under objection. The State argued that members of the villages connected to Nunamta Aulukestai included commercial fishers, guides, and tourism promoters — giving Nunamta Aulukestai an economic incentive to bring litigation that would stop mineral exploration near Bristol Bay. Pebble claimed its production requests sought information directly relevant to discovering information about Nunamta Aulukestai's and the individuals' economic incentives and abilities to pay attorney's fees and costs.

## C. Third-Party Discovery Requests

In addition to seeking discovery from Nunamta Aulukestai and the individuals, Pebble also subpoenaed information from two third parties, Trustees for Alaska and Alaska Conservation Foundation.

Trustees for Alaska is a non-profit organization that represents Nunamta Aulukestai and the individuals in this litigation. Pebble's subpoena for Trustees for Alaska requested a representative's deposition regarding funding sources for the litigation, the terms of any grants or other arrangements used for litigation funding, and the amount actually spent on the litigation. Pebble's subpoena also requested production of documents related to funding sources, litigation costs paid to third parties, grants and related correspondence, fundraising appeals and requests, and communications between Trustees for Alaska and other organizations.

Alaska Conservation Foundation is a non-profit organization established to promote natural resource conservation in Alaska, including preservation of the Bristol Bay watershed. Pebble's subpoena requested a representative's deposition regarding grants or funding arrangements for the litigation, the identity of donors providing funding through Alaska Conservation Foundation to Trustees for Alaska, and the identities of any commercial or sport fishers or businesses involved in Alaska Conservation Foundation's Bristol Bay Fisheries and Watershed Protection Campaign, a "coalition of commercial and sport [fishers], Alaska Native groups, local businesses, and environmental groups" opposed to the Pebble Project. The subpoena also requested documents relating to money given to Trustees for Alaska for the litigation, all litigation-related communications between Alaska Conservation Foundation and Trustees for Alaska, federal tax filings, and documents relating to fundraising for the Bristol Bay Fisheries and Watershed Protection Campaign.

Trustees for Alaska and Alaska Conservation Foundation sought protective orders from the superior court. Trustees for Alaska asserted that the constitutional right to free association justified keeping financial and donor information confidential: "Disclosure of the information identified in the deposition notice will infringe on the associational activities of Trustees [for Alaska] and those who fund or contribute to Trustees [for Alaska]." Trustees for Alaska argued that Pebble was not entitled to the disclosures because no showing had been made that the information was crucial to the issue of Nunamta Aulukestai's or the individuals' economic incentives, or that the requested information would lead to relevant admissible evidence. Alaska Conservation Foundation similarly argued that Pebble's discovery requests implicated information protected by the constitutional guarantee of freedom of association, and that Pebble had not shown a compelling need for the information. Alaska Conservation Foundation's executive director submitted an affidavit stating that disclosure of Alaska Conservation Foundation's donors and communications would have a chilling effect on its future public interest litigation funding.

Pebble responded that the "lawsuit was part and parcel" of Alaska Conservation Foundation's campaign against the Pebble Project. Pebble contended its discovery requests sought information "to substantiate its well-founded belief that . . . Trident Seafoods, the Bristol Bay Regional Seafoods Development Association, sportfishing lodges, and others, funded this lawsuit in order to further their economic interests in the Bristol Bay region." Pebble's legal argument centered on the premise that discovery into the economic motives of those funding the litigation, not merely the named plaintiffs, was necessary to effectuate AS 09.60.010's purpose. Pebble submitted a proposed confidentiality order limiting use of the information to the attorney's fees dispute, arguing that keeping the information confidential eliminated concerns about Alaska Conservation Foundation's and Trustees for Alaska's constitutional rights.

### D. Discovery Order

The superior court issued a comprehensive order on the discovery motions and the requested protective orders. The court concluded the case was not "merely about the permitting," there was sufficient evidence to suggest that significant commercial interests were behind the litigation, and therefore further discovery was warranted into the economic incentives of Nunamta Aulukestai, the individuals, and the third parties. But the court included a protective order for all subsequent discovery. Financial information from any party could be marked "confidential" and then could be seen only by attorneys and not disclosed to third parties or clients.

The discovery order required Nunamta Aulukestai, the individuals, Trustees for Alaska, and Alaska Conservation Foundation to supplement disclosures and respond to the State's and Pebble's discovery requests. The order required Nunamta Aulukestai to provide the names of each member village corporation shareholder who worked in the seafood or tourism industries in Bristol Bay, and to disclose contributions, federal tax filings, Nunamta Aulukestai's two most recent bank statements, and any information related to contributors or donations to the organization or lawsuit. The order required the individuals to disclose the market value of any real property owned, complete tax filings and earnings statements from 2008 to 2011, their two most recent bank statements, and statements of any other assets.

The superior court also approved Pebble's requests for depositions and disclosures from Alaska Conservation Foundation and Trustees for Alaska. The order required Alaska Conservation Foundation and Trustees for Alaska to produce full and complete responses during depositions regarding sources and terms of any grants for the litigation, identification of donors and all other funding sources for the litigation, and communications between Trustees for Alaska and Alaska Conservation Foundation regarding the litigation. Alaska Conservation Foundation and Trustees for Alaska also

were ordered to produce or disclose information relating to fundraising, funding for the litigation, donors, grants, and written correspondence with donors for the lawsuit. Alaska Conservation Foundation was ordered to identify fishers or local businesses involved in its Bristol Bay Fisheries and Watershed Protection Campaign.

### E.    Applications For Relief And Petition for Review

Alaska Conservation Foundation filed an original application for relief in this court, seeking to reverse the superior court's third-party discovery order.  First, it argued that AS 09.60.010 does not authorize discovery into the economic motivations or finances of third-party funders of constitutional litigation.  Second, it argued that even if the statute generally allows a court to compel discovery from third parties, the discovery order in this case violated constitutional associational rights.

Trustees for Alaska also filed an original application for relief in this court, seeking the same relief and arguing that AS 09.60.010 does not authorize discovery from non-parties to litigation.  Trustees for Alaska further argued that the discovery order violated constitutional rights to free association and privacy and improperly compelled disclosure of attorney work product.

Nunamta Aulukestai and the individuals filed a petition for review, asking us to vacate the discovery order.  They contested the superior court's decision to allow discovery on the economic incentive issue "despite the absence of any plausible direct economic benefit to [the] claimants."  They argued that the injunctive and declaratory relief sought in the litigation could not confer an economic benefit to the named plaintiffs or any third parties.  They also claimed that the superior court lacked authority to allow discovery from third parties unless there was a showing that those third parties controlled the claimant or were the "[r]eal part[ies] in [i]nterest."

We granted the original applications for relief and the petition for review and consolidated the cases for oral argument and decision.  We held oral argument in this

matter and in the related appeal regarding the underlying litigation's merits on the same day. In a separate decision issued today, we reversed the superior court's decision in favor of the State and Pebble and remanded for entry of declaratory relief in favor of Nunamta Aulukestai and the individuals on their constitutional claim.[7] On remand Nunamta Aulukestai and the individuals will be the prevailing parties, and under AS 09.60.010(c)(1) they will be entitled to an award of attorney's fees and costs so long as they "did not have sufficient economic incentive to bring the suit, regardless of the constitutional claims involved."[8] Thus, absent the illogical notion that "sufficient economic incentive" means something different with respect to the statutory affirmative award of attorney's fees and costs than it would with respect to the statutory protection from an adverse award of attorney's fees, the question presented remains alive.

## III. STANDARD OF REVIEW

Interpretation of AS 09.60.010 is a question of law to which we apply our independent judgment.[9] When interpreting statutes, "[w]e look to 'the meaning of the language, the legislative history, and the purpose of the statute in question' "[10] and "adopt[] 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[11]

---

[7]  *Nunamta Aulukestai*, Op No. 7011 at 48-49.

[8]  AS 09.60.010(d)(2).

[9]  *See Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 252-53, 257-58 (Alaska 2009).

[10]  *Fancyboy v. Alaska Vill. Elec. Coop., Inc.*, 984 P.2d 1128, 1132 (Alaska 1999) (quoting *Muller v. BP Exploration (Alaska), Inc.*, 923 P.2d 783, 787 (Alaska 1996)).

[11]  *Krone*, 222 P.3d at 252 (quoting *Glamann v. Kirk*, 29 P.3d 255, 259 (continued...)

## IV.    DISCUSSION

### A.    Alaska Statute 09.60.010 Adopted Our Common Law Public Interest Litigation Meaning Of "Sufficient Economic Incentive."

#### 1.    The public interest litigation exception to Alaska Civil Rule 82

Civil Rule 82 generally entitles a prevailing party to an attorney's fees award from the opposing party.[12]  But in *Gilbert v. State* we recognized an exception for public interest litigation, concluding that an adverse attorney's fees award in a case raising important matters of public interest was against public policy.[13]  Three years later in *Anchorage v. McCabe* we expanded the public interest litigation doctrine to include awards of full reasonable attorney's fees to successful parties raising important matters of public interest, adopting a three-part test to determine whether a party qualified as a public interest litigant.[14]  The test required that the litigation: (1) effectuate strong public policies; (2) provide benefits to numerous people if successful; and (3) be capable of initiation only by a private party.[15]  We noted that the public interest exception to Rule 82 was judicially "designed to encourage plaintiffs to bring issues of public interest to

---

[11]    (...continued)
(Alaska 2001)).

[12]    *See* Alaska R. Civ. P. 82(a).

[13]    526 P.2d 1131, 1136 (Alaska 1974) ("As a matter of sound policy, we hold that it is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts."), *superseded by statute*, ch. 86, §§ 1-2, SLA 2003 (codified at AS 09.60.010(b)-(e)).

[14]    568 P.2d 986, 991, 993-94 (Alaska 1977) (quoting *La Raza Unida v. Volpe*, 57 F.R.D. 94, 101 (N.D. Cal. 1972)), *superseded by statute*, ch. 86, §§ 1-2, SLA 2003 (codified at AS 09.60.010(b)-(e)).

[15]    *Id*. at 991 (quoting *La Raza Unida*, 57 F.R.D. at 101), *superseded by statute*, ch. 86, §§ 1-2, SLA 2003 (codified at AS 09.60.010(b)-(e)).

the courts" without risk of adverse attorney's fees awards if they lost.[16] In a dissenting opinion Justice Boochever argued for the inclusion of a fourth prong to the public interest litigant test, to consider the economic interests of the party invoking the public interest exception to Rule 82.[17] He stated that "[w]here the sums at stake in the controversy are sufficiently large to prompt suit regardless of the public interest, an award of attorney's fees against the losing party has been found reasonable."[18] He argued that in cases involving potential financial gain there was no need to remove the potential for an adverse attorney's fees award.[19]

In *Kenai Lumber Co. v. LeResche* we adopted the core concept of Justice Boochever's *McCabe* dissent by requiring that litigants demonstrate a lack of economic incentive to bring the litigation before attaining public interest litigant status.[20] In that case a timber company challenged the State's timber contract with a competing company.[21] The superior court ruled in favor of the State and the competing company, upholding the challenged contract and awarding attorney's fees to the competing company.[22] The timber company appealed, claiming that it satisfied the three-part public interest test because challenging allegedly invalid State contracts was in the public

---

[16]    *Id*. at 990.

[17]    *Id*. at 996 (Boochever, J., dissenting).

[18]    *Id*.

[19]    *Id*.

[20]    646 P.2d 215, 223 (Alaska 1982).

[21]    *Id*. at 217.

[22]    *Id*. at 217, 222.

interest.[23]  We affirmed the superior court's award of attorney's fees against the timber company, noting that although it satisfied the three-prong test, courts must consider a fourth prong to prevent abuses of the public interest litigation doctrine:  whether the litigant had sufficient economic incentive for bringing suit.[24]  We reasoned that a claimant with sufficient economic incentive to bring a lawsuit is "less apt than a party lacking this incentive to be deterred from bringing a good faith claim by the prospect of an adverse award of attorney's fees."[25]  We concluded that because the timber company "was seeking a continuing source of timber to process in its mill, the [superior] court could have concluded that it had sufficient economic reasons to challenge the [contract] amendment regardless of the grounds for the challenge."[26]

> **2.    Alaska Statute 09.60.010's constitutional claimant exception to Rule 82**

In 2003 the Alaska Legislature abrogated and replaced our public interest litigation exception to Rule 82 with a new statutory provision that encourages and protects parties bringing constitutional claims.[27]  The new law requires courts to award

---

[23]    *Id*. at 222 & n.19.

[24]    *Id*. at 223.

[25]    *Id*.

[26]    *Id*.

[27]    Ch. 86, §§ 1-2, SLA 2003 (codified at AS 09.60.010(b)-(e)); *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 253-54 (Alaska 2009); *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 391-95 (Alaska 2007) (providing the history of ch. 86, SLA 2003 (referred to as House Bill (H.B.) 145)).  In *Nunapitchuk* we determined the statutory provision abrogating our common law public interest litigant exception to Rule 82 was constitutional.  156 P.3d at 395.  We recognized that the Legislature did not modify Rule 82, but rather enacted substantive law eliminating and replacing the
(continued...)

full reasonable attorney's fees to a successful constitutional claimant, but only if the claimant lacked sufficient economic incentive to bring the claim:

> (c)     In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court
>
> > (1)     shall award, subject to (d) . . . of this section, full reasonable attorney fees and costs to a claimant, who, as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or on appeal, has prevailed in asserting the right;
> >
> > . . . .
>
> (d)     In calculating an award of attorney fees and costs under (c)(1) of this section,
>
>  . . . .
>
> > (2)     the court shall make an award only if the claimant did not have sufficient economic incentive to bring the suit, regardless of the constitutional claims involved.[28]

The new law also provides that a party bringing a non-frivolous constitutional claim will not face an adverse attorney's fees award if the claim is unsuccessful and the party lacked sufficient economic incentive to bring the claim:

> (c)     In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court

---

[27]     (...continued)
judicially created common law public interest litigant exception to attorney's fees awards under Rule 82. *Id*. at 404-05.

[28]     AS 09.60.010(c)-(d).

. . . .

(2) may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.[29]

Although the Legislature abrogated our decisions creating and applying the public interest litigation exception to Rule 82,[30] it adopted our language from the fourth prong of the public interest litigant test: The statute requires that a constitutional claimant lack "sufficient economic incentive" to bring the claim regardless of the nature of the constitutional claim — the same phrase we used in *Kenai Lumber* when creating the fourth prong of the public interest litigant test.[31] When the legislature creates statutory language using terms of art with an existing judicial construction, we will presume that the legislature intended to give the statutory provisions the same historical

---

[29]    AS 09.60.010(c)(2).

[30]    Ch. 86, § 1(b), SLA 2003 (abrogating *Dansereau v. Ulmer*, 955 P.2d 916 (Alaska 1998); *Se. Alaska Conservation Council, Inc. v. State*, 665 P.2d 544 (Alaska 1983); *Thomas v. Bailey*, 611 P.2d 536 (Alaska 1980); *Anchorage v. McCabe*, 568 P.2d 986 (Alaska 1977); *Gilbert v. State*, 526 P.2d 1131 (Alaska 1974)); *see also Nunapitchuk*, 156 P.3d at 395.

[31]    *Kenai Lumber Co.*, 646 P.2d at 223. In *Simpson v. Murkowski*, 129 P.3d 435, 448 (Alaska 2006), we noted that the "[statutory] provision mirrors the fourth prong of the [public interest litigant] test."

meaning.[32] And legislative history supports the conclusion that the "sufficient economic incentive" requirement in AS 09.60.010 is the same as the fourth prong of our prior public interest litigant test.[33] During legislative hearings supporters of the bill testified that the constitutional claimant exception "recreates something very similar to the public interest doctrine by statute."[34] We therefore conclude that our prior cases interpreting

---

[32]   *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 633 n.33 (Alaska 2011) ("We assume the legislature is aware of the common law when it passes legislation." (citing *Young v. Embley*, 143 P.3d 936, 945 (Alaska 2006))); *Joseph v. State*, 293 P.3d 488, 492 (Alaska App. 2012) ("[T]he legislature is presumed to be aware of pertinent court decisions when it amends a statute."); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 615-16 (2001) (Scalia, J., concurring) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word . . . and the meaning its use will convey to the judicial mind unless otherwise instructed." (first alteration in original) (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)) (internal quotation marks omitted)); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 699 (1979) ("In sum, it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them."); *Commonwealth v. Colturi*, 864 N.E.2d 498, 501 (Mass. 2007) ("We also presume that when the Legislature amends a statute it is aware of the prior state of the law as explicated by the decisions of this court, and where it has reenacted statutory language without material change, [it is] presumed to have adopted the judicial construction put upon it." (citations and internal quotation marks omitted)).

[33]   One of the bill's supporters argued that "this law does not abolish public interest litigant status . . . . What [the bill] really does is [retain] the essence of the public interest litigant doctrine for the cases that relate to our most important rights . . . ." Debate on C.S.H.B. 145 (FIN) Before the Senate, 23d Leg., 1st Sess. (May 20, 2003) (statement of Sen. Ralph Seekins).

[34]   Hearing on C.S.H.B. 145 (FIN) Before the House Fin. Comm., 23d Leg., 1st Sess. (May 12, 2003) (testimony of Christopher Kennedy, Assistant Attorney Gen.,
(continued...)

the economic incentive prong of the public interest litigant test provide the guiding parameters for the meaning of "sufficient economic incentive" under AS 09.60.010.

**B.      A Claimant Lacks "Sufficient Economic Incentive" If The Litigation's Primary Purpose Is Not Economic Gain.**

Since *Kenai Lumber* our focus has been on primary purpose:  A litigant has sufficient economic incentive to bring a claim when it is brought primarily to advance the litigant's direct economic interest, regardless of the nature of the claim.  We generally examine two factors — the nature of the claim and relief sought and the direct economic interest at stake — to determine primary purpose.

**1.      Nature of the claim and relief sought**

The nature of the claim and the type of relief requested are strong indicators of primary purpose.  We look to statements made in the pleadings and proceedings about the rationale for the lawsuit,[35] to whether the relief requested was equitable or legal,[36] and

---

[34]      (...continued)
Dep't of Law); *see also* Minutes, House Fin. Comm. Hearing on C.S.H.B. 145 (FIN), 23d Leg., 1st Sess. (May 9, 2003) (statement of Sen. Therriault, bill's sponsor, quotation from minutes) (explaining that constitutional claimants were "a class of litigants recognized by the court as receiving special provisions that provide for the possibility of having attorney fees covered if the case is successful . . . [and] that the bill proposed to restrict those criteria to constitutional issues").

[35]      *See, e.g.*,  *Leisnoi, Inc. v. Stratman*, Mem. Op. & J. No. 1369, 2010 WL 3719166, at \*3 (Alaska Sept. 22, 2010) (citing statements made in previous administrative hearings and evidence of the claimant's prior behavior to conclude claimant had an economic incentive); *Musser v. Wells Fargo Home Mortg., Inc.*, Mem. Op. & J. No. 1307, 2008 WL 1914375, at \*4 (Alaska Apr. 30, 2008) (examining "main action" in complaint); *Puddicombe v. Fitzgerald*, Mem. Op. & J. No. 930, 1999 WL 33958803, at \*2 (Alaska Aug. 25, 1999) (examining affirmative defenses to conclude "motivation in this case was in good measure due to [economic incentives]").

[36]      *Compare City of Kotzebue v. State, Dep't of Corr.*, 166 P.3d 37, 47 (Alaska (continued...)

to the amount of money in controversy,[37] to determine whether the litigant had sufficient economic incentive to bring the claim. But the type of relief sought is not always conclusive: "Economic interest need not take the form of damages,"[38] and requesting injunctive relief does not guarantee a lack of economic motivation.[39] We also have stated

---

[36]      (...continued)
2007) (determining that party seeking reimbursement for costs had sufficient economic incentive), *with Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1199 (Alaska 1995) ("The fact that [claimants] sought only equitable relief, rather than damages, also indicates that economic motivation was not a significant factor in bringing this case."); *see also Patterson v. State, Dep't of Envtl. Conservation*, Mem. Op. & J. No. 989, 2000 WL 34545820, at *7 (Alaska Aug. 30, 2000) (noting complaint was amended to add a request for damages and finding an economic incentive); *Ninilchik Traditional Council v. Noah*, 928 P.2d 1206, 1219 (Alaska 1996) ("[T]he parties here have made no claim for monetary damages, indicating that economic motivation was not a significant factor in bringing the claim.").

[37]      *See Bruner v. Petersen*, 944 P.2d 43, 50 (Alaska 1997) ("[T]he economic incentive of $10,000 in wages, coupled with the request for punitive damages for an additional $10,000, demonstrates a sufficient economic incentive to bring the suit regardless of the possible public interest elements of his claim . . . ." (internal quotation marks omitted)); *Murphy v. City of Wrangell*, 763 P.2d 229, 233 (Alaska 1988) (finding sufficient economic incentive after considering possible award of punitive damages and the fact the case was filed in superior court seeking more than $25,000 in total damages).

[38]      *Matanuska-Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 403 (Alaska 1997).

[39]      *See, e.g.*, *Kachemak Bay Watch, Inc. v. Noah*, 935 P.2d 816, 827-28 (Alaska 1997). In *Kodiak Seafood Processors Ass'n* we suggested that a request only for injunctive relief indicated a lack of economic incentive. 900 P.2d at 1199. But we later clarified that the type of relief by itself is not dispositive — in *Fairbanks North Star Borough v. Interior Cabaret, Hotel, Restaurant & Retailer's Ass'n*, we stressed that "the lack of potential for a monetary recovery, while relevant, is not conclusive." 137 P.3d 289, 292 (Alaska 2006) (footnote omitted) (citing *Eyak Traditional Elders Council v. Sherstone, Inc.*, 904 P.2d 420, 426 (Alaska 1995); *Kodiak Seafood Processors Ass'n*, (continued...)

that courts must " 'look to the facts of the case to determine the litigant's primary motivation for filing the suit.' "[40] The facts of the case, including the pleadings, relief requested, standing declarations, and types of arguments made during the proceedings inform the determination of primary purpose.[41]

In *Gwich'in Steering Committee v. State, Office of the Governor* we examined the type of relief requested and determined that the claimant did not have sufficient economic incentive to bring its claim.[42] In that case a nonprofit organization dedicated to protecting caribou filed suit seeking public records about state lobbying activities for drilling operations in the Arctic National Wildlife Refuge.[43] After the organization lost its suit, the superior court ordered it to pay attorney's fees to the State.[44] We reversed that order, concluding that the organization did not have sufficient economic incentive to litigate because the relief requested — disclosure of records under the Public Records Act — "sought access to information, not money or other economic advantage," and because the organization's economic interest in protecting caribou for

---

[39]     (...continued)
900 P.2d at 1199).

[40]     *O'Callaghan v. State*, 920 P.2d 1387, 1390 (Alaska 1996) (quoting *Eyak Traditional Elders Council*, 904 P.2d at 426).

[41]     Standing declarations can be indicative of the claimant's motivations, but standing based on economic harm is "not synonymous with economic incentive." *Griswold v. City of Homer*, 925 P.2d 1015, 1030 (Alaska 1996) (quoting *Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 799 n.3 (Alaska 1984)) (internal quotation marks omitted.

[42]     10 P.3d 572, 584-85 (Alaska 2000).

[43]     *Id*. at 576-77.

[44]     *Id*. at 584.

subsistence uses was not substantial.[45]

In *McCormick v. Smith* we similarly relied on the type of relief requested to conclude that a claimant lacked sufficient economic incentive to bring a claim.[46] In *McCormick* an individual prevailed in the superior court on her challenge to a recall petition to remove her from a school board, requesting an injunction against the recall election.[47] We reversed and ordered the individual to pay the prevailing appellant's attorney's fees on appeal.[48] We vacated that order on rehearing, concluding that the individual was entitled to public interest litigant status because she did not have a sufficient economic incentive to bring her claim:

> [The individual] sought only to enjoin the recall election, not to recover money damages. Moreover, according to [the individual], she serves on the school board "without compensation." Thus, prevention of her recall election was not intended to protect a paycheck. Accordingly, [the individual] appears to meet the fourth prong of the [public interest litigant] test.[49]

## 2. Direct economic interest

We also look to the direct economic interest at stake when determining primary purpose. When direct economic benefits will flow to the claimant as a result of successful litigation, that is strong evidence the litigant had economic incentive to bring the claim. But direct economic benefits do not flow only from lawsuits seeking damages.

---

[45] *Id.* at 585.

[46] 799 P.2d 287, 288 (Alaska 1990).

[47] *Id*. at 287-88.

[48] *Id*. at 287.

[49] *Id.* at 288 (citation omitted).

In *Shepherd v. State, Department of Fish & Game* we determined that a big game hunting guide had sufficient economic incentive to bring a claim challenging Alaska Board of Game regulations giving preferences to subsistence hunting in certain areas.[50] We concluded that the guide "was primarily motivated to litigate by concerns for his own economic livelihood" because he had a direct economic interest in eliminating the preferences to increase his guiding area.[51]

On the other hand, we have concluded that litigation was not primarily motivated by economic interests when it would confer only indirect or attenuated economic benefits. In *Kodiak Seafood Processors Ass'n v. State* a fishing trade association sued the state alleging that an improper decision had been made to allow scallop dredge fishing in areas previously closed to protect juvenile crabs.[52] The trade association, representing seafood processors, claimed that opening those areas would cause potential harm to the crabs and the sea floor, and, impliedly, to fishers' livelihoods.[53] But we stated that even though the trade association's members had an economic interest in crab and bottom fish fisheries, "[t]he potential economic benefit to [the association] from this litigation is indirect. [The association] will gain only if the areas are eventually reopened to crab fishing."[54] A favorable outcome in the trade

---

[50]    897 P.2d 33, 35, 45 (Alaska 1995).

[51]    *Id*. *Similarly see Kenai Lumber Co. v. LeResche*, 646 P.2d 215, 223 (Alaska 1982) (concluding that timber company challenging State timber contract with another company was seeking continuing timber supply, supporting superior court's determination that timber company had sufficient economic incentive to bring suit).

[52]    900 P.2d 1191, 1193 (Alaska 1995).

[53]    *See id*. at 1193-95.

[54]    *Id*. at 1198-99.

association's litigation would not have led to direct economic benefits because other independent administrative decisions stood in the way of any economic gain.[55]

In *Ninilchik Traditional Council v. Noah* fishing associations and environmental groups sued the State over procedural and substantive violations in an oil and gas lease sale, asking for injunctive relief against one particular lease.[56] We noted that the fishing associations may have had an economic interest to stop oil and gas leasing but that "any economic benefit to the parties from the litigation is indirect."[57] In *Keane v. Local Boundary Commission* we determined that a lawsuit challenging a state decision to incorporate a local area, which then would implement a sales tax, "was directed at the formation of a municipality, rather than at the imposition of a tax; economic interests were affected only indirectly."[58] And in *Spenard Action Committee v. Lot 3, Block 1, Evergreen Subdivision* a nonprofit neighborhood organization sued for injunctive relief against the development of a subdivision; we concluded that the organization "will not receive any direct financial benefit from the successful outcome of this litigation," despite the possibility that its members "may benefit indirectly based on improved property values."[59]

---

[55] *See id.*

[56] 928 P.2d 1206, 1218-19 (Alaska 1996).

[57] *Id*. at 1219.

[58] 893 P.2d 1239, 1251 (Alaska 1995).

[59] 902 P.2d 766, 782 (Alaska 1995).

**C.    There Was Not Sufficient Economic Incentive To Bring This Litigation Regardless Of The Constitutional Claim Involved.**

Under any standard of review,[60] it was error for the superior court to look at future possibilities and contingencies well outside the contours of the litigation to conclude that this case was not merely about permitting.  Just as *Kodiak Seafood Processors Ass'n* was only about stopping scallop dredge fishing in a previously protected area and not about the possible economic effect on crab fishers' livelihoods,[61] and just as *Ninilchik Traditional Council* was only about injunctive relief relating to one oil and gas lease and not about the potential impact of oil and gas leasing on commercial

---

[60]    The parties have not briefed the possible standards of review for determinations relevant to protected constitutional claimant status under AS 09.60.010. We previously used a discretionary standard for encouraging or protecting common law public interest litigants.  *See, e.g.*, *Fairbanks N. Star Borough v. Interior Cabaret, Hotel, Rest. & Retailers Ass'n*, 137 P.3d 289, 291 (Alaska 2006). But the legislature has couched the encouragement and protection of qualifying constitutional claimants in seemingly mandatory terms — AS 09.60.010(c)(1) states that a court "shall award" attorney's fees and costs to a qualifying successful claimant, and AS 09.60.010(c)(2) states that a court "may not order" a qualifying unsuccessful claimant to pay attorney's fees.  The statute does not suggest new standards for determining the reasonableness of requested attorney's fees, but under AS 09.60.010(e) a court seemingly has discretion to abate attorney's fees and costs awards upon a finding of "substantial and undue hardship."  *See supra* note 6.  The specific determination of "sufficient economic incentive" conceivably could be a discretionary determination by the superior court or a mixed question of fact and law.  We do not need to decide that question here, but either way the basis for the determination rarely should require examination beyond the factual contours of the litigation itself, and even more rarely should require the broad and free-ranging discovery ordered here.  The legislature intended AS 09.60.010 to encourage and protect constitutional litigants; it is unlikely the legislature intended lengthy and expensive litigation over the rights it created.

[61]    900 P.2d 1191, 1193-95, 1198-99 (Alaska 1995).

fishing,[62] this case is only about constitutional limitations on the State's issuance of land and water use permits to Pebble and not about whether the Pebble Project should proceed or whether the Pebble Project may harm Bristol Bay fisheries.

The complaint and arguments advanced by Nunamta Aulukestai and the individuals make clear that their primary objective was making the State's permitting process compliant with the Alaska Constitution. The declaratory and injunctive relief requested accord with Nunamta Aulukestai and the individuals' consistent emphasis on public involvement in the permitting process.[63] Nunamta Aulukestai and the individuals did not claim money damages or attempt to use the lawsuit to secure direct economic gain; their references to public use of the area and private economic loss supported their argument for public notice and involvement in the permitting process, not an argument for economic relief.

We reiterate and emphasize the necessity of direct economic benefit from constitutional litigation for "sufficient economic incentive," and from that perspective also address the State's and Pebble's "stalking horse" argument. We do not suggest that there never could be a third party seeking some direct economic benefit by funding a nominal plaintiff's constitutional litigation, and we agree that in such an instance the third party's direct economic incentive might be relevant to an attorney's fees award

---

[62]     928 P.2d at 1219.

[63]     *See Oceanview Homeowners Ass'n v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 799 (Alaska 1984) ("Oceanview's consistent emphasis on health and safety to the virtual exclusion of economic concerns indicates that it would not have had 'sufficient economic incentive to bring the lawsuit.'" (quoting *Kenai Lumber Co. v. LeResche*, 646 P.2d 215, 223 (Alaska 1982))).

under AS 09.60.010.[64] But the third party's economic interest still must be direct, not indirect. Many people and organizations are opposed to the Pebble Project, and some of that opposition is based on concerns that the Pebble Project ultimately may have negative effects on the Bristol Bay watershed and commercial fisheries.[65] Commercial fishery interests may fund litigation by others seeking to delay or stop the Pebble Project, but this does not automatically transform otherwise indirect economic benefit into direct economic benefit. Here the underlying litigation was limited to constitutional requirements for the State's permitting process. No matter the result, the underlying litigation could not directly affect any Pebble Project opponent's economic interests.

Focusing on the funding of constitutional litigation rather than on the litigation itself to determine primary purpose, as was done here, can lead easily to the wrong result. And as Trustees for Alaska and Alaska Conservation Foundation make

---

[64] Direct economic incentive of a third party would be relevant if that third party controlled the litigation or the claimant were merely acting on behalf of the third party. *See Carmony v. McKechnie*, 217 P.3d 818, 823 (Alaska 2009) ("The superior court made ample findings in support of its conclusion that Carmony acted on behalf of his employer . . . and that [the employer] had economic incentives to promote the initiative in question."); *Petitioners for Dissolution of Skagway & Incorporation of a Skagway Borough v. Local Boundary Comm'n*, 186 P.3d 571, 572-74 (Alaska 2008) (discussing third-party "control" of litigation where third party " 'bankrolled the action, directed it, and is the real litigant here' "); *Matanuska Elec. Ass'n. v. Rewire the Bd.*, 36 P.3d 685, 698 (Alaska 2001) ("[E]vidence might have supported, but did not compel, a finding that Rewire's suit was aimed at improving [a third party's] bargaining position . . . .").

[65] *See, e.g.*, *Hughes v. Treadwell*, 341 P.3d 1121, 1123, 1125 (Alaska 2014) (confirming previous order for election ballot placement for the "Bristol Bay Forever" initiative requiring final legislative authorization for any new large-scale metallic sulfide mining operations in Bristol Bay Fisheries Reserve watershed); *Pebble Ltd. P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1078-81 (Alaska 2009) (rejecting Pebble's argument that proposed clean water initiative would be unlawful special legislation despite current application only to Pebble Project and one other mine).

clear in their arguments, discovery and collateral litigation about funding sources may implicate separate constitutional concerns, which, in light of our decision, we do not need to address at this time. We also suggest that there rarely, if ever, should be a situation where the economic interests of lawyers representing a constitutional claimant are relevant to AS 09.60.010. For example, the possibility of an attorney's fees award under the statute should not be "sufficient economic incentive" to bring constitutional litigation; nor should indirect economic benefits, such as lawsuit-generated publicity and fundraising, be "sufficient economic incentive" to bring constitutional litigation.

Finally, we address the State's argument that Nunamta Aulukestai had economic incentive to bring the litigation to protect the Bristol Bay area for subsistence uses, including hunting and fishing. Throughout the litigation Nunamta Aulukestai stressed that its members rely on the Bristol Bay area for subsistence uses, suggesting that the lawsuit was designed to protect those uses from the Pebble Project. But, as noted, Nunamta Aulukestai's arguments were focused on reasons for public notice and involvement, not for economic compensation, and we consistently have held that protecting subsistence uses is not sufficient economic incentive to bring a lawsuit. In *Alaska Survival v. State, Department of Natural Resources* we rejected the argument that protecting subsistence uses conferred an economic incentive to litigants, explaining that "a more substantial financial interest is required before a litigant will be deemed to have an independent economic incentive to bring suit."[66] And in *Gwich'in Steering Committee* we rejected the idea that a nonprofit tribal-based organization "whose [litigation] sought access to information" had an economic incentive based on its interest

---

[66] 723 P.2d 1281, 1292 (Alaska 1986) (citing *Kenai Lumber Co. v. LeResche*, 646 P.2d 215, 223 (Alaska 1982); *Mobil Oil Corp. v. Local Boundary Comm'n*, 518 P.2d 92, 104 (Alaska 1974)).

in protecting caribou for subsistence uses.[67] Thus, Nunamta Aulukestai's emphasis on protecting subsistence uses of the Bristol Bay area does not mean there was direct economic incentive to bring this litigation.

## D. Summary Of Our Decision

We interpret AS 09.60.010's "sufficient economic incentive" language in the same manner we interpreted that language in our public interest litigation cases. We conclude that there was not sufficient economic incentive for Nunamta Aulukestai and the individuals to bring their constitutional claim regardless of its constitutional basis. The nature of the claim and the equitable relief requested indicate that their primary purpose was securing changes to and increasing notice and public involvement in the State's mineral exploration permitting process. And neither they nor any opponents of the Pebble Project, even if they helped fund this litigation, had a direct economic interest in the outcome — the indirect economic interests possibly at stake and Nunamta Aulukestai's interests in protecting subsistence uses are not enough to demonstrate "sufficient economic incentive" under AS 09.60.010. We agree with Nunamta Aulukestai and the individuals that it was error to allow discovery into economic incentive in light of the nature of the relief sought and "despite the absence of any plausible direct economic benefit to [the] claimants."

## V. CONCLUSION

We VACATE the discovery order and REMAND for further attorney's fees proceedings consistent with today's opinions.

---

[67]     10 P.3d 572, 585 (Alaska 2000).