*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA MINERS ASSOCIATION, COUNCIL OF ALASKA PRODUCERS, and RICHARD HUGHES, | ) ) ) ) | Supreme Court No. S-15885 |
| | ) | Superior Court No. 4FA-13-01296 CI |
| | ) | |
| Appellants, | ) | O P I N I O N |
| | ) | |
| v. | ) | No. 7180 – June 16, 2017 |
| | ) | |
| JOHN H. HOLMAN; MARK NIVER; CHRISTINA SALMON; MEAD TREADWELL, LIEUTENANT GOVERNOR OF THE STATE OF ALASKA; and STATE OF ALASKA, DIVISION OF ELECTIONS, | ) ) ) ) ) ) ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Paul R. Lyle, Judge.

Appearances: Matthew Singer and Robert J. Misulich, Holland & Knight LLP, Anchorage, for Appellants. Timothy A. McKeever and Stacey C. Stone, Holmes Weddle & Barcott, P.C., Anchorage, for Appellees Holman, Niver, and Salmon. Notice of nonparticipation filed by Elizabeth M. Bakalar, Assistant Attorney General, and Craig W. Richards, Attorney General, Juneau, for Appellees Treadwell and State of Alaska, Division of Elections.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.      INTRODUCTION

Richard Hughes, Alaska Miners Association, and Council of Alaska Producers (Hughes plaintiffs) challenged the certification of a ballot initiative that would subject large-scale mining operations in the Bristol Bay region to additional legislative approval. It is undisputed that this initiative, if passed, would impact the Pebble Project, a potential large-scale mining project in the Bristol Bay region. The initiative's sponsors, John H. Holman, Mark Niver, and Christina Salmon (Holman intervenors), intervened on the side of the State, and the State and intervenors moved for summary judgment to establish the legality of the initiative. The superior court granted the State's and the Holman intervenors' motions for summary judgment and we affirmed on the merits.[1]

The Holman intervenors then moved for full reasonable attorney's fees as constitutional claimants under AS 09.60.010.[2] The Hughes plaintiffs opposed, arguing

---

[1]      *Hughes v. Treadwell*, 341 P.3d 1121, 1134 (Alaska 2015).

[2]      AS 09.60.010(c) states in part,

In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court (1) shall award, subject to (d) and (e) of this section, full reasonable attorney fees and costs to a claimant, who, as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or on appeal, has prevailed in asserting the right.

AS 09.60.010(d) states in part,

(continued...)

that they themselves were constitutional claimants and that the Holman intervenors were not constitutional claimants because they were intervenor-defendants. The superior court determined that the Holman intervenors were constitutional claimants. It also found that because Pebble Limited Partnership (Pebble) financed at least part of the litigation for the Hughes plaintiffs, Pebble was the real party in interest; the court further found that Pebble did not qualify as a constitutional claimant because it had sufficient economic incentive to bring the action. The court therefore awarded the Holman intervenors full reasonable attorney's fees. The Hughes plaintiffs appeal. We hold that because this case is fundamentally about constitutional limits on the ballot-initiative process and not whether the Pebble Project should go forward, the Hughes plaintiffs did not have sufficient economic incentive to remove them from constitutional-claimant status, and we therefore reverse the award of attorney's fees.

## II.  FACTS AND PROCEEDINGS

This appeal involves an attorney's fees dispute following a superior court decision upholding Lt. Governor Mead Treadwell's certification of the "Bristol Bay Forever" ballot initiative. The initiative was approved to be placed on the November 2014 ballot. It required additional legislative approval for "a large-scale metallic sulfide mining operation located within the watershed of the Bristol Bay Fisheries Reserve."

In January 2013 Richard Hughes filed suit against Lt. Governor Treadwell and the State of Alaska, Division of Elections seeking declaratory and injunctive relief and asserting that the initiative was contrary to the subject matter restrictions in

---

[2](...continued)

> In calculating an award of attorney fees and costs under (c)(1) of this section, . . . (2) the court shall make an award only if the claimant did not have sufficient economic incentive to bring the suit, regardless of the constitutional claims involved.

article XI, section 7 of the Alaska Constitution.[3] Hughes also alleged that the initiative violated separation of powers. Hughes's Amended Complaint added as a plaintiff the Alaska Miners Association, and his Second Amended Complaint added the Council of Alaska Producers. The initiative's sponsors, John H. Holman, Mark Niver, and Christina Salmon, moved to intervene as defendants, and the superior court granted that motion.[4]

In February 2014 the superior court granted summary judgment in favor of the State and the Holman intervenors,[5] and on appeal we affirmed the superior court's decision.[6]

After the superior court entered final judgment the Holman intervenors moved for an award of full attorney's fees and costs, claiming that they were constitutional claimants or in the alternative that they were entitled to attorney's fees and costs under Alaska Rules of Civil Procedure 79[7] and 82.[8] The Holman intervenors

---

[3]    *See Hughes*, 341 P.3d at 1124. Article XI, section 7 provides,

The initiative shall not be used to dedicate revenues, make or repeal appropriations, create courts, define the jurisdiction of courts or prescribe their rules, or enact local or special legislation. The referendum shall not be applied to dedications of revenue, to appropriations, to local or special legislation, or to laws necessary for the immediate preservation of the public peace, health, or safety.

[4]    *Hughes*, 341 P.3d at 1124.

[5]    *Id*.

[6]    *Id*. at 1134.

[7]    Alaska R. Civ. P. 79(a) provides,

Unless the court otherwise directs, the prevailing party is entitled to recover costs allowable under paragraph (f) that

(continued...)

supported their motion with affidavits from Holman, Niver, and Salmon. All claimed that they did not have an economic incentive for pursuing litigation; rather, they asserted that they were primarily concerned with protecting their rights to get the initiative on the ballot.[9]

The Hughes plaintiffs opposed the motion and raised two primary arguments: (1) they were constitutional claimants and thus immune from attorney's fees under AS 09.60.010(c); and (2) the statute was intended to protect persons who raised constitutional claims against the State but not to protect intervenor-defendants against

---

[7](...continued)
were necessarily incurred in the action. The amount awarded for each item will be the amount specified in this rule or, if no amount is specified, the cost actually incurred by the party to the extent this cost is reasonable.

[8]     Alaska R. Civ. P. 82(b)(2) provides,

In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred, and shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred. The actual fees shall include fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk.

[9]     Niver declared that he worked for part of the year as a commercial fisherman in Bristol Bay. Holman declared that he owned a sport-fishing lodge in the Lake Clark area but that his lodge was about 60 miles from the proposed Pebble Mine and that the mine therefore would not impact his business. Salmon declared that she engages in subsistence gathering, fishing, and hunting in the Bristol Bay region.

private parties.[10]  In support of their argument that they were constitutional claimants, they filed affidavits from Hughes; Deantha Crockett, Executive Director of the Alaska Miners Association; and Karen Matthias, Managing Consultant of the Council of Alaska Producers.  Each disclaimed any economic interest in the litigation.  Notably, their opposition did not allege that the Holman intervenors had an economic incentive to litigate and were therefore not constitutional claimants.  They also contended that the Holman intervenors' fees were excessive.

In their reply brief in superior court, the Holman intervenors asserted that the Hughes plaintiffs had economic incentive to bring the action and suggested that Pebble was actually the entity paying for the litigation.  The Holman intervenors attached an affidavit from Scott Kendall, an attorney working for them.  Kendall attached a number of publications to his affidavit connecting the Hughes plaintiffs to Pebble.

At oral argument counsel for the Hughes plaintiffs conceded that plaintiffs' litigation fees had been paid for by the Alaska Miners Association, the Council of Alaska Producers, and Pebble.  He also conceded that Pebble had agreed to indemnify all of the named plaintiffs in the event of an adverse attorney's fees ruling.  But he argued that if the Hughes plaintiffs' interests in mining could exclude them from constitutional-claimant status, then the Holman intervenors' interests in commercial fishing should likewise disqualify them from constitutional-claimant status.

The superior court awarded full fees to the Holman intervenors in the amount of $63,944.  The court first concluded that the intervenors were claimants under AS 09.06.010(c) because "[their] summary judgment motions sought declarations that [the initiative] was constitutional and [they] sought dismissal of [the Hughes plaintiffs']

---

[10]    The Hughes plaintiffs claimed that the Holman intervenors were not "plaintiff[s], counterclaimant[s], cross claimant[s], or third-party plaintiff[s]" under AS 09.60.010(c)(1).

complaint. [Their] claims were, therefore, in substance, counterclaims to [the plaintiffs'] claims: [they] sought the exact opposite result [the plaintiffs] sought." The court found that this was true even though the Holman intervenors failed to raise counterclaims in their answer.

The court next sought to determine whether the Hughes plaintiffs were constitutional claimants and therefore exempt from paying fees. The court decided that "[t]hey filed non-frivolous constitutional claims on which they did not prevail and [were] subject to paying full, reasonable attorney's fees and costs only if they had an economic incentive to bring the action." The court then found that they had an economic incentive to bring the claim because "[t]he only entity actually paying the intervenors' fees[, Pebble,] will be the entity with an undeniably 'sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance.' "[11] The court did not make findings whether the Holman intervenors had a sufficient economic incentive to preclude constitutional-claimant status.

The court provided an alternate ruling in the event that on appeal this court determined the court was not permitted to consider Pebble's funding of the litigation. The court found that "[the Alaska Miners Association's] and [the Council of Alaska Producers'] affidavits fail to make a prima facie showing of the interests of their typical members so that the court can assess the organizational economic incentives." The Council noted only that it was a trade group "representing Alaska's large metal mining industry"; the court found that the Council therefore failed to provide it with sufficient evidence to determine the Council's constitutional-claimant status under AS 09.60.010(c)(1). Similarly, the court found that the Alaska Miners Association

---

[11]     (The superior court quoted *Citizens Coalition for Tort Reform, Inc. v. McAlpine*, 810 P.2d 162, 171 (Alaska 1991) (discussing economic incentive under former public-interest-litigant doctrine).

identified classes of members, but it failed to provide information concerning its members' typical economic interests. The court concluded that the two organizations therefore waived their claims to constitutional-claimant status.

The court next analyzed whether Hughes was a constitutional claimant. The court noted that his affidavit disclaimed any economic interest in the litigation and that he therefore had made a prima facie showing that he had no financial interest in the litigation. But the court concluded that the Holman intervenors "submitted evidence tending to rebut [this] prima facie showing." Because the ongoing relationship between Hughes and Pebble was unclear, the court stated that the Holman intervenors would be permitted discovery on that issue if this court disagreed with the superior court's primary ruling. Finally, the superior court found that most of the Holman intervenors' fees were reasonable.

The Hughes plaintiffs appeal.

## III.  STANDARD OF REVIEW

"Interpretation of AS 09.60.010 is a question of law to which we apply our independent judgment. When interpreting statutes, '[w]e look to "the meaning of the language, the legislative history, and the purpose of the statute in question" ' and 'adopt "the rule of law that is most persuasive in light of precedent, reason, and policy." ' "[12]

## IV.  DISCUSSION

In 2003 the Alaska Legislature passed AS 09.60.010(c), which provides for an award of reasonable attorney's fees to successful constitutional claimants and an

---

[12]     *Alaska Conservation Found. v. Pebble Ltd. P'ship*, 350 P.3d 273, 279 (Alaska 2015) (alterations in original) (first quoting *Fancyboy v. Alaska Vill. Elec. Coop., Inc.*, 984 P.2d 1128, 1132 (Alaska 1999); then quoting *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 252 (Alaska 2009)).

exemption from paying attorney's fees for unsuccessful constitutional claimants.[13]  This statute abrogated and replaced Alaska's common-law public-interest-litigant doctrine.[14]  In crafting the constitutional-claimant provision, the legislature incorporated the "sufficient economic incentive" exception that we had earlier developed in our public-interest-litigant cases[15]:

> In a civil action or appeal concerning the establishment, protection, or enforcement of a right under the United States Constitution or the Constitution of the State of Alaska, the court . . . may not order a claimant to pay the attorney fees of the opposing party devoted to claims concerning constitutional rights if the claimant as plaintiff, counterclaimant, cross claimant, or third-party plaintiff in the action or appeal did not prevail in asserting the right, the action or appeal asserting the right was not frivolous, and the claimant did not have sufficient economic incentive to bring the action or appeal regardless of the constitutional claims involved.[16]

The parties agree that the Hughes plaintiffs sought "the establishment, protection, or enforcement of a right under . . . the Constitution of the State of Alaska"; the only disagreement concerns the question of "sufficient economic incentive."  The superior court ruled that Pebble, and not the named plaintiffs, was the real party in interest and that Pebble had "sufficient economic incentive to bring the action."

The superior court's determination that Pebble was the real party in interest may have been based on our comment in *Alaska Conservation Foundation v. Pebble*

---

[13]   *Id.* at 280.

[14]   *Id.*

[15]   *Id.* at 281.

[16]   AS 09.60.010(c)(2).

*Limited Partnership* where we said, "We do not suggest that there never could be a third party seeking some direct economic benefit by funding a nominal plaintiff's constitutional litigation, and we agree that in such an instance the third party's direct economic incentive might be relevant to an attorney's fees award under AS 09.60.010."[17] But we have never actually held that a third party could be the real party in interest for the purposes of this statute. We do not reach this question today because we hold that this case is fundamentally about constitutional limits on the ballot-initiative process and that therefore the Hughes plaintiffs did not have "sufficient economic incentive" to remove them from constitutional-claimant status.

This case is the mirror image of *Alaska Conservation Foundation*. In that case individual Alaskans and a non-profit organization sued the State for alleged constitutional violations in issuing land and water use permits to Pebble.[18] Pebble intervened on the side of the State, and the State and Pebble were ultimately victorious.[19] The plaintiffs in that case sought to prove constitutional-claimant status to avoid an award of attorney's fees.[20] Pebble sought and the superior court granted discovery to determine the plaintiffs' funding sources.[21] We reversed that discovery order.[22]

---

[17] *Alaska Conservation Found.*, 350 P.3d at 285.

[18] *Id.* at 275.

[19] *Id.*

[20] *Id.*

[21] *Id.* at 276-78.

[22] *Id.* at 275.

-10- 7180

We explained that "[e]conomic interest need not take the form of damages,"[23] but "courts must 'look to the facts of the case to determine the litigant's primary motivation for filing the suit.' "[24] We concluded that there was not "sufficient economic incentive" because the "case [was] only about constitutional limitations on the State's issuance of land and water use permits to Pebble and not about whether the Pebble Project should proceed or whether the Pebble Project may harm Bristol Bay fisheries."[25] "We reiterate[d] and emphasize[d] the necessity of direct economic benefit from constitutional litigation for 'sufficient economic incentive' " and cautioned that "[f]ocusing on the funding of constitutional litigation rather than on the litigation itself to determine primary purpose . . . can lead easily to the wrong result."[26] Regardless of the sources of their funding, the plaintiffs in *Alaska Conservation Foundation* qualified as constitutional claimants.

The same analysis applies here. This case is about constitutional limitations on the ballot-initiative process and not about whether the Pebble Project should proceed. The Holman intervenors argue that Pebble had a direct economic incentive to bring the action because the initiative "injects uncertainty on the question of whether the Pebble Project will ultimately be approved by the legislature." They note that uncertainty alone "can scare off financing and derail the [P]roject at very early stages" and "have an immediate impact in the form of lowering the stock prices of companies associated with the Project, such as [Pebble]." But we held in *Alaska Conservation Foundation* that "it

---

[23]    *Id.* at 282 (quoting *Matanuska-Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 403 (Alaska 1997)).

[24]    *Id.* (quoting *O'Callaghan v. State*, 920 P.2d 1387, 1390 (Alaska 1996)).

[25]    *Id.* at 284.

[26]    *Id.* at 285.

was error for the superior court to look at future possibilities and contingencies well outside the contours of the litigation."[27]  The same is true here:  uncertainty or possible future gains or losses do not constitute "sufficient economic incentive to bring the action" where the primary purpose of the litigation was to bring constitutional challenges to a ballot initiative.

It is undoubtedly true that requiring legislative approval for the Pebble Project will add to the level of uncertainty around the Pebble Project.  But we have never required that parties seeking constitutional-claimant status — or public-interest-litigant status under our former framework — be completely disinterested in the case.[28]  Doing so would likely eliminate the constitutional-claimant rule altogether.  This case is fundamentally about the ballot-initiative process and not a case about whether the Pebble Project should go forward.  We have repeatedly underscored the public-interest nature of suits involving elections.[29]

---

[27]    *Id.* at 284.

[28]    *See, e.g.*, *Ninilchik Traditional Council v. Noah*, 928 P.2d 1206, 1218-19 (Alaska 1996) (holding that a marginal economic incentive for the litigants did not preclude them from asserting public-interest-litigant status); *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1193, 1198-99 (Alaska 1995) (holding that seafood producers were public interest litigants because they would only benefit from the litigation if other administrative barriers were overcome).

[29]    *See, e.g.*, *Municipality of Anchorage v. Citizens for Representative Governance*, 880 P.2d 1058, 1062 (Alaska 1994) ("The proposition that our democratic society has a strong public interest in fair elections is tautological."); *id.* at 1061-63 (reviewing past public-interest-litigant cases and noting that "a number of cases stand for the proposition that normal compensation of an elected office is not sufficient economic incentive to defeat the public interest status of an officeholder or candidate seeking to vindicate a public interest").

We reiterate and emphasize — again — that *direct* economic benefit is needed for there to be "sufficient economic incentive to bring the action." Possible or speculated impact is not enough. We hold that because this case concerns the constitutionality of a ballot initiative, Hughes, the Alaska Miners Association, and the Council of Alaska Producers did not have a "sufficient economic incentive to bring the action." Therefore, they are protected from an award of attorney's fees pursuant to AS 09.60.010(c) regardless of the real party in interest and regardless of the economic interests of the Alaska Miners Association's and the Council of Alaska Producers' typical members.[30]

## V.    CONCLUSION

We REVERSE the superior court's award of full attorney's fees to Holman, Niver, and Salmon.

---

[30]    We do not reach the superior court's ruling that it would permit discovery into Hughes's relationship with Pebble. But we again reiterate that "[f]ocusing on the funding of constitutional litigation rather than on the litigation itself to determine primary purpose . . . can lead easily to the wrong results" and that discovery orders of this nature could raise constitutional concerns. *Alaska Conservation Found.*, 350 P.3d at 285. We also do not address whether intervenor-defendants can be constitutional claimants under AS 09.60.010. It is sufficient for purposes of this case to hold that because the plaintiffs were unsuccessful constitutional claimants who did not have a "sufficient economic incentive to bring the action," they are protected from an award of attorney's fees.