**FAIRBANKS NORTH STAR BOROUGH, Appellant,**

v.

**INTERIOR CABARET, HOTEL, RESTAURANT & RETAILERS ASSOCIATION, Appellee.**

No. S–11612.

Supreme Court of Alaska.

June 9, 2006.

---

Joseph W. Miller, Assistant Borough Attorney, and René Broker, Borough Attorney, Fairbanks, for Appellant.

Peter J. Aschenbrenner, Aschenbrenner Law Offices, Inc., Fairbanks, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

We consider here whether a nonprofit industry trade association that unsuccessfully challenged a proposed sales tax qualifies as a public interest litigant for purposes of avoiding an Alaska Civil Rule 82 award of attorney's fees. Because all of the association's members have some commercial interest in the sale of alcoholic beverages, and because they had some financial interest in defeating a proposed tax on sales of alcoholic beverages in the Fairbanks North Star Borough, it was an abuse of discretion to conclude that the association was a public interest litigant, even though the extent of the negative impact of the proposal on the members was not established. We therefore reverse and remand for consideration of Fairbanks North Star Borough's motion for attorney's fees.

## II. FACTS AND PROCEEDINGS

The Fairbanks North Star Borough assembly in July 2003 enacted Ordinance 2003–46, which proposed a referendum approving a five percent retail sales tax on alcoholic beverages. The ordinance contained a ballot question and an implementing ordinance that would become effective if voters approved the tax.

Interior Cabaret, Hotel, Restaurant & Retailers Association (ICHRRA) is a nonprofit organization that was incorporated in 1997 to support the alcohol beverage industry. Members of ICHRRA are businesses licensed to sell alcoholic beverages. Although ICHRRA has not explicitly admitted that all of its members are for-profit businesses, the borough's opening brief describes ICHRRA's members as "composed entirely of profit-oriented businesses" and ICHRRA's appellee's brief does not dispute this description. ICHRRA has acknowledged on appeal that it

brought the suit "because its members would be directly and adversely affected" by adoption of the tax ordinance.

ICHRRA filed suit on August 8, 2003 to prevent the proposed question from being placed on the October 7, 2003 election ballot. ICHRRA alleged that the ballot question was misleading and that Ordinance 2003–46 proposed an invalid tax, and sought a preliminary injunction to prevent the sales tax question from appearing on the ballot. On August 22 the superior court denied ICHRRA's motion for a preliminary injunction. The borough assembly then enacted Ordinance 2003–52, which amended the ballot language of Ordinance 2003–46. Borough voters approved the amended tax proposal in the October election.

ICHRRA then amended its complaint to allege that the tax was invalid because it violated AS 29.35.150 and AS 04.21.010(c). The borough moved for summary judgment and the superior court granted the borough's motion. When the borough moved for attorney's fees under Civil Rule 82, the superior court found that ICHRRA was a public interest litigant and denied the borough's attorney's fees motion.

The borough here appeals only the superior court's ruling that ICHRRA is a public interest litigant.

## III. DISCUSSION

### A. Standard of Review

■ We review for abuse of discretion a superior court's determination of a party's public interest litigant status made in the

context of an Alaska Civil Rule 82 claim for prevailing-party attorney's fees.[1]

### B. ICHRRA Is Not a Public Interest Litigant.

■ A prevailing party in civil litigation is normally entitled to recover partial attorney's fees under Alaska Civil Rule 82. But the prevailing party is not entitled to an award of attorney's fees if the other party is a public interest litigant.[2]

■ We have specified four criteria for determining public interest litigant status:

(1) Is the case designed to effectuate strong public policies?

(2) If the plaintiff succeeds will numerous people receive benefits from the lawsuit?

(3) Can only a private party have been expected to bring the suit?

(4) Would the purported public interest litigant have sufficient economic incentive to file suit even if the action involved only narrow issues lacking general importance? [3]

"[A] litigant must satisfy all four criteria to be deemed a public interest litigant."[4] The borough does not dispute that ICHRRA satisfies the first three criteria. Our inquiry therefore focuses on whether ICHRRA would have had sufficient economic incentive to file suit even if the action had lacked general importance. As the party claiming public interest litigant status, ICHRRA bore the burden of showing that it did not have sufficient economic interest to file suit.[5]

1. *Cabana v. Kenai Peninsula Borough*, 21 P.3d 833, 835 (Alaska 2001) (citing *Kachemak Bay Watch, Inc. v. Noah*, 935 P.2d 816, 821 (Alaska 1997)).

2. *See Koyukuk River Tribal Task Force on Moose Mgmt. v. Rue*, 63 P.3d 1019, 1020 (Alaska 2003) ("'[I]t is an abuse of discretion to award attorneys' fees against a losing party who has in good faith raised a question of genuine public interest before the courts.'") (quoting *Gilbert v. State*, 526 P.2d 1131, 1136 (Alaska 1974)).

In 2003 the legislature amended AS 09.60.010(b) to prevent "discriminat[ion] in the award of attorney fees and costs to or against a party in a civil action or appeal based on" the factors we have used to determine public interest

litigant status. Ch. 86, § 2, SLA 2003. Because we conclude that ICHRRA is not a public interest litigant, it is unnecessary to decide whether the 2003 amendment affects this case.

3. *Cabana*, 21 P.3d at 836 (quoting *Citizens Coal. for Tort Reform, Inc. v. McAlpine*, 810 P.2d 162, 171 (Alaska 1991)) (internal quotation marks omitted).

4. *Citizens Coal. for Tort Reform*, 810 P.2d at 171 (citing *Anchorage Daily News v. Anchorage Sch. Dist.*, 803 P.2d 402, 404 (Alaska 1990); *Murphy v. City of Wrangell*, 763 P.2d 229, 233 (Alaska 1988)).

5. *Cabana*, 21 P.3d at 837.

■ "[P]ossessing an economic interest does not necessarily destroy a party's capacity to be a public interest litigant."[6] "[T]he court should also look to the facts of the case to determine the litigant's *primary motivation* for filing the suit."[7] "In making this assessment, the court must review specific facts about the character of the professed public interest litigant and the nature of that litigant's real financial stake in the lawsuit."[8]

■ The superior court, in finding that ICHRRA did not have sufficient economic incentive to file suit, relied on the fact that ICHRRA did not seek monetary damages. But the lack of potential for a monetary recovery, while relevant,[9] is not conclusive.[10] "Economic interest need not take the form of damages."[11]

ICHRRA argues that *Citizens for the Preservation of the Kenai River, Inc. v. Sheffield* indicates that it is a public interest litigant.[12] In *Kenai River* we upheld the superior court's determination that a nonprofit corporation formed to bring the lawsuit was a public interest litigant because "the superior court could have concluded

that, of the alleged one hundred or more individuals represented by CPKR, all but a few had economic incentives that were insubstantial or diffuse enough to satisfy the fourth element of the public interest test."[13] We noted that an organization's economic incentive to bring suit "must depend on the interests of typical members" and we "speculate[d]" that "members that did not submit affidavits had even smaller economic incentives" than the few who did.[14] The court concluded, over a forceful dissent,[15] that it was not an abuse of discretion for the superior court to find that the organization was a public interest litigant.[16]

ICHRRA's reliance on *Kenai River* is misplaced. All but a few members of the organization in that case had "insubstantial or diffuse" economic incentives.[17] Here it is undisputed that all of ICHRRA's members have some sort of direct financial interest.[18]

In *Kachemak Bay Watch, Inc. v. Noah* we upheld the superior court's denial of public interest litigant status to a nonprofit corporation that had unsuccessfully challenged the approval of various aquatic farming permits

6. *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1198 (Alaska 1995) (affirming superior court's finding that association of seafood company managers seeking to enjoin scallop fishing in closed waters was public interest litigant).

7. *Eyak Traditional Elders Council v. Sherstone, Inc.*, 904 P.2d 420, 426 (Alaska 1995) (citing *Abbott v. Kodiak Island Borough Assembly*, 899 P.2d 922, 924–25 (Alaska 1995)) (emphasis added).

8. *Id.* at 425–26 (internal quotation marks omitted).

9. *See Kodiak Seafood Processors*, 900 P.2d at 1199 (reasoning that because corporation sought only equitable relief, not damages, economic motivation was not significant motivation in bringing case).

10. *Eyak Traditional Elders Council*, 904 P.2d at 426 (noting that "the fact that a litigant seeks monetary relief is not conclusive," rather the court must "determine the litigant's primary motivation for filing the suit" based on all the facts of the case).

11. *Matanuska–Susitna Borough Sch. Dist. v. State*, 931 P.2d 391, 403 (Alaska 1997).

12. *Citizens for the Preservation of the Kenai River, Inc. v. Sheffield*, 758 P.2d 624 (Alaska 1988).

13. *Id.* at 627.

14. *Id.*

15. *Id.* at 627–28 (Rabinowitz, J., dissenting).

16. *Id.* at 627.

17. *Id.*

18. ICHRRA's original complaint asserted that "ICHRRA members are licensed to do business in the State of Alaska under Title 4, Alaska Statutes." ICHRRA's August 11, 2003 memorandum in support of its motion for preliminary injunction stated that "[ICHRRA's president] is, as are ICHRRA members, licensed to do business in the State of Alaska as a licensee under Title 4, Alaska Statutes." Similarly ICHRRA's brief of appellee declares that "ICHRRA originally brought the underlying lawsuit because its 'members would be directly and adversely affected....'" These statements imply that all members are licensees. The borough's brief of appellant explicitly asserts that ICHRRA's "members are all business licensees, all licensed to sell alcoholic beverages." ICHRRA has not disputed this description on appeal.

without seeking monetary damages.[19] We noted that the corporation "did not provide the superior court with detailed information about its membership and their interests." [20] We also observed that two of the corporation's directors were concerned that the permits would adversely affect their property values, and a third was concerned that "aquatic farming in the area could interfere with his business." [21] We therefore held that the superior court had not erred in finding that the corporation's members had sufficient economic interest to file suit for equitable relief.[22]

ICHRRA bears the burden of showing that it was not economically motivated to file this suit.[23] The borough argues that in the absence of evidence to the contrary, for-profit businesses are expected to be motivated by economic concerns, and ICHRRA was acting in its members' economic interest in filing this suit.

ICHRRA is correct that the economic interest of its members does not automatically preclude it from being a public interest litigant. In *Kodiak Seafood Processors Ass'n v. State* we noted that the association's "members have a significant stake in the crab and bottom fish fisheries around Kodiak" but concluded that "[t]he potential economic benefit to [the association] is indirect." [24] Association members would only benefit "if the areas are eventually reopened to crab fishing." [25] There was no indication the closed area affected by the experimental permit would ever be reopened.

Here the superior court described the total economic effect of the tax on ICHRRA's members as nebulous and uncertain. The record does not establish the extent to which the tax would reduce sales or revenues, and the extent of additional effort required of retailers collecting the tax was uncertain.

But these uncertainties were matters of degree. There was no doubt that the tax would have a direct, negative impact on ICHRRA's members. ICHRRA's memorandum in support of the motion for preliminary injunction argued that the members "would be directly and adversely affected by the voter adoption of" the tax. Because the effect on the members of the association in *Kodiak Seafood Processors* was indirect and contingent, that case is distinguishable from the one before us. In *Kodiak Seafood Processors* the "indirect" nature of the potential economic effect turned on the uncertainty of whether certain waters would ever be reopened for fishing.[26]

ICHRRA argues that because consumers rather than retailers pay the tax, the tax does not cost its members anything. But the record establishes that at least one of ICHRRA's members has contemplated "absorb[ing] the tax" so that the total price, including the tax, would remain at pretax levels. This implies that some members believe higher prices would hurt sales. Basic economic theory recognizes that the distribution of a tax burden depends on the elasticity of supply and demand, not on whether it is the retailer or consumer who "writes the check" to the government. Furthermore, assuming ICHHRA is correct that the tax burden will ultimately fall on consumers, the higher market price will reduce the market quantity demanded. This reduction will reduce overall sales, to the detriment of members.

Moreover, every tax has compliance costs over and above simple monetary costs. ICHRRA has noted that these would include "whether and how to file or register, how to coordinate the Borough tax with the City of North Pole tax, whether [members] would be subject to audits, whether [members] would be subject to interest, penalties and liens."

19. *Kachemak Bay Watch, Inc. v. Noah*, 935 P.2d 816, 820–21, 828 (Alaska 1997).

20. *Id.* at 828.

21. *Id.*

22. *Id.*

23. *Cabana*, 21 P.3d at 837.

24. *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1198–99 (Alaska 1995). Because the case involved conservation and preservation of natural resources, *see id.* at 1193–94, the issues went beyond simple economic concerns.

25. *Id.* at 1199.

26. *Id.*

Perhaps these additional burdens can also be passed on to the consumer in the form of higher prices. The full cost to members of the tax includes the "opportunity cost" for time spent for compliance. Members may pass this cost on to consumers but, as explained above, will ultimately suffer reduced sales as the price increase reduces the quantity demanded. ICHRRA seems to suggest that because there may have been significant non-financial burdens on its members this non-financial burden somehow proves that the primary interest was not economic. Yet regulations that require compliance as a condition of doing business tend to increase the cost of doing business, even if the cost is not primarily monetary. Based on ICHRRA's contentions below, we can assume that avoiding additional regulations and borough mandates to collect the proposed tax provided an economic incentive for ICHRRA's members. The fact that some of the burden on ICHRRA's members might be non-monetary does not prove that they had no economic incentive to file suit.

For the same reasons, the fact that the relief ICHRRA sought was non-monetary is not important. Preventing the tax from taking effect would likely prevent reductions in profits and sales and avoid compliance costs; this benefit potentially had greater economic impact than a monetary award. Injunctive or declaratory relief can have economic benefit.[27] We are unpersuaded that these potential benefits to ICHRRA's members were "insubstantial" or "diffuse," as ICHRRA argues.

The superior court did not clearly err in thinking that the extent of the tax's effect on sales was "uncertain" to ICHRRA when it filed suit. But ICHRRA did not need to know the exact extent of the tax's economic effect in order to have ample economic incentive to file suit.

In *Kachemak Bay Watch*, two members of the plaintiff organization were concerned that aquatic farming permits might lower their property values, and another was concerned that aquatic farms might interfere with its business.[28] We held that the association was not a public interest litigant, even though there was no indication the parties knew the extent of the economic harm the aquatic farms might inflict on their property and business. Similarly, ICHRRA's members had an economic incentive to prevent a sales tax on their product even if they were unsure of the extent to which the tax would negatively affect their businesses.

ICHRRA argued in its memorandum in support of its motion for a preliminary injunction that its members "would be directly and adversely affected by" the tax and that it qualified "as a public interest litigant based upon the economic interest of its members." These statements undermine ICHRRA's later claims that it was not motivated by its members' economic interests.

Because ICHRRA did not satisfy its burden of showing that it was not motivated primarily by economic concerns, we conclude that it was an abuse of discretion to find that ICHRRA was a public interest litigant.

At oral argument on appeal the borough suggested that it was hampered in being denied a discovery opportunity to determine the exact membership of ICHRRA. Because we hold that ICHRRA did not meet its burden of demonstrating that it was not motivated primarily by economic concerns, this discovery issue is moot.

## IV. CONCLUSION

We therefore REVERSE the ruling that ICHRRA is a public interest litigant and REMAND for further proceedings.

**27.** . *See Jackson v. American Bar Ass'n,* 538 F.2d 829, 831 (9th Cir.1976) ("Where the complaint seeks injunctive or declaratory relief and not monetary damages, the amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented.").

**28.** *Kachemak Bay Watch,* 935 P.2d at 828.